IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN NAVAS,

    Plaintiff,

    v.

MULTISYSTEMS RESTAURANTS, INC.,

    Defendant.

CIVIL NO. 06-2163 (JAG/BJM)

## OPINION AND ORDER

### INTRODUCTION

Plaintiff Carmen Navas ("Navas" or "plaintiff") filed a complaint against defendant MultiSystems Restaurants, Inc. ("MultiSystems" or "defendant") for disability discrimination, age discrimination, and unjust dismissal. (Docket No. 1). Plaintiff's claims arise under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Puerto Rico's Law 100 of June 30, 1959, *as amended*, 29 L.P.R.A. § 146 *et seq.* ("Law 100"), Puerto Rico's Law 80 of May 30, 1976, *as amended*, 29 L.P.R.A. § 185a *et seq.* ("Law 80"), and Puerto Rico's Law 44 of July 2, 1985, 1 L.P.R.A. § 501 *et seq.* ("Law 44"). Both parties consented to have the case heard by me pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Docket No. 17). Defendant filed a motion for summary judgment as to all claims (Docket No. 34), plaintiff opposed (Docket No. 43), and defendant submitted a reply (Docket No. 47). For the reasons that follow, the motion for summary judgment is **granted**.

## FACTUAL BACKGROUND

For summary judgment purposes, the following facts, presented in the light most favorable to the non-moving party, are not genuinely in dispute. Navas has a mental condition that at times has necessitated visits to a psychiatrist and/or medication. (Docket No. 34, Exh. 1, p. 84-85). During 2003, plaintiff's psychiatrist instructed her to slowly lower her dosages. She did as he instructed, and by about September 2003 was able to function normally without medication. Id. at p. 83-85. Shortly thereafter, she began working at MultiSystems as a payroll clerk on a probationary contract. (Docket No. 34, Exh. 1, p. 65; Exh. 3; Exh. 4). At the time, she was 49 years old. (Docket No. 34, Exh. 4; Exh. 6, p. 5, ¶ 19). MultiSystems's human resources manager, Ada L. Reyes, interviewed and hired her. (Docket No. 34, Exh. 1, p. 63). At the time of her hiring, plaintiff did not provide MultiSystems with information regarding any physical, mental, or medical condition or impairment. Id. at p. 68. Plaintiff functioned normally without medication during much of her employ with MultiSystems, id. at p. 83-85, and could perform all her daily life activities such as running, walking, breathing, sleeping, and concentrating. Id. at p. 111-12.

Although Navas had been hired to fill a vacant position in the payroll department, she never worked in that area since the payroll position did not open up as anticipated. At that point, Reyes told plaintiff, "Look, I'm rushed, I'm busy, I haven't told you what you have to do, but stay there, continue doing something until I can, because we are all rushed." As per Reyes's instructions, plaintiff lent a hand to coworkers, and thereafter took up the position of office clerk in the human resources department. (Docket No. 43, Exh. E, p. 111-14). In that position, she was in charge of filing and labeling personnel files, faxing documents, and receiving correspondence sent to the

human resources area. (Docket No. 34, Exh. 1, p. 117, 119-21).

Navas's supervisor, Ms. Reyes, reportedly gave plaintiff contradictory instructions that made plaintiff "look like an idiot" in front of her coworkers. Such instructions included telling her to copy one side of all the pages in a stack of documents and later telling her that both sides must be copied. (Docket No. 43, Exh. J, p. 25-28). On one occasion early in her employment – and during her probationary period – plaintiff asked Reyes for permission to attend an appointment with her psychiatrist because she was being treated for nerves. (Docket No. 34, Exh. 1, p. 85, 88; Docket No. 43, Exh. L, p. 56-57). Plaintiff made no other visit to her psychiatrist during her employment with MultiSystems. Id. Héctor Santo Domingo, a coworker, saw no officer of the company treat Navas as if she were mentally disabled in any way. (Docket No. 34, Exh. 2, p. 64-65). But he heard Reyes refer to plaintiff as "Señora" in a mocking, pejorative, or disrespectful manner, and tell plaintiff "you're not well, take the little pill". Coworkers sometimes called plaintiff "the lady of the turnovers" or "the lady of the fried fritters." (Docket No. 43, Exh. P, p. 95-98; Exh. Q, p. 118; Exh. R, p. 129). Plaintiff also was blamed occasionally for mistakes she did not make, such as losing files. (Docket No. 43, Exh. G, p. 163-64).

Navas was called to Reyes's attention for doing work not assigned to her such as cleaning desks and sweeping the floor, and for distracting coworkers by talking to them and interrupting their work, while leaving her own duties unfulfilled. (Docket No. 34, Exh. 6, p. 6). But plaintiff never received a written reprimand for this (Docket No. 43, Exh. H, p. 174; Exh. O), and was invited to stay on with MultiSystems upon completing her probationary period. (Docket No. 43, Exh. G, p. 161-65). Mr. Santo Domingo stated that plaintiff was the company's "little angel" because of her

superior performance; that she put in extra time; that she wore many hats at the company, meaning she performed many different duties; and that she was able to organize the files during the period of the highest backlog of work in the company's history. (Docket No. 43, Exh. N, p. 28-30).

In apparent contravention of MultiSystem's employee manual, which states that the workday runs from 8:00 a.m. until 5:00 p.m. and that lunch is from 12:30 p.m. until 1:30 p.m. (Docket No. 34, Exh. 11), Navas believed that her workday ran from 8:30 a.m. until 5:00 p.m. and that her lunch hour was from 12:00 p.m. until 1:00 p.m. (Docket No. 43, Exh. F). On numerous occasions, she forgot to punch in or punch out in order to record the time she arrived to or left from work. (Docket No. 34, Exh. 1, p. 135, 137; Exh. 13, p. 1-9; Exh. 14, p. 1, 7-9, 17, 18, 22, 29, and 31). Plaintiff also was absent from her job numerous times in order to attend to personal matters (Docket No. 34, Exh. 1, p. 142-45) and was warned about this often. (Docket No. 34, Exh. 6, p. 6).

Tamara Bonilla, another coworker, attests that Navas once went to all the offices with a bottle of water and proceeded to spray water everywhere in order to "get out the bad vibrations." (Docket No. 34, Exh. 8, p. 4). Bonilla remembers that plaintiff once stated that something bad will happen and that a bomb will go off. Id. At one point, plaintiff asked Bonilla to submit a verification of employment form to the Housing Department stating that plaintiff worked less than 40 hours per week in order for plaintiff to retain all her benefits under Plan 8, but Bonilla refused, worried that such action could cost her her job. (Docket No. 34, Exh. 8, p. 3).

An incident on May 4, 2004 led to Navas's resignation. On that day, plaintiff, allegedly at Reyes's request, offered to make copies of application documents for a prospective new employee. Ms. Bonilla, who was newly in charge of recruitment, told plaintiff that she could not make the

**Carmen Navas v. MultiSystems Restaurants, Inc.**  Page 5
Civil No. 06-2163 (JAG/BJM)
Opinion and Order

copies. An argument ensued, and Bonilla went to Reyes to discuss the dispute and returned confirming that no copies were to be made. When another applicant entered, also without copies, Bonilla said to plaintiff, "Don't you dare make it for her," prompting another argument, during which Bonilla said that plaintiff always lost the files and that the papers plaintiff filled out were never complete. Plaintiff became upset, said that she "couldn't take it any more," and ran to the president's office. Plaintiff told Carmen López, the president's secretary, that she wanted to quit and requested that she prepare a letter of resignation. López instead suggested that plaintiff talk to Reyes about how she feels. Plaintiff then went to Reyes's office and submitted a letter of resignation, which neither stated the reason for her resignation nor alleged anything about being harassed or discriminated against due to age or for suffering from a mental impairment. Reyes asked plaintiff what happened and plaintiff answered by saying that she has to leave. Reyes laughed at plaintiff and said that she cannot retain any employee who does not want to stay with the company. (Docket No. 34, Exh. 1, p. 202-04, 206-08; Exh. 7, p. 4; Exh. 8, p. 2-3; Exh. 9, p. 2; Docket No. 43, Exh. K, p. 46-47).

When she was first hired at MultiSystems, Navas received and signed the company's policy against harassment providing that all employees shall enjoy a work environment free of any type of discrimination. (Docket No. 34, Exh. 12). This policy also contained the procedure to be followed by employees who felt they were victims of discrimination. Id. Nevertheless, throughout her employment, plaintiff never complained to Reyes or any other officer of MultiSystems that she was being discriminated against based on her age or for being perceived as disabled. However, on May 21, 2004, she wrote a letter to the president of the company, stating for the first time that she had

been harassed in the workplace. (Docket No. 34, Exh. 1, p. 233-34; Exh. 16).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine," the court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed.R.Civ.P. 56(e); Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsuchita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The parties must rely upon admissible evidence to support or oppose summary judgment. Fed.R.Civ.P. 56(e); Hoffman v. Applicators Sales and Serv., Inc., 439 F.3d 9, 14 (1st Cir. 2006). Of course, the court

draws inferences and evaluates facts "in the light most favorable to the nonmoving party." Leary, 58 F.3d at 751.

## DISCUSSION

Navas claims, citing both federal and Puerto Rico law, that she was perceived as an individual with a mental disability, and that such perception led to a hostile working environment and constructive discharge from her employment. She further asserts that she was discriminated on the basis of her age, and that she was wrongfully discharged in violation of Puerto Rico's Law No. 80. MultiSystems moves for summary judgment on all causes of actions, arguing (1) that she was not an individual perceived as having an impairment that substantially limited a major life activity; (2) that she did not suffer a hostile working environment based on perceived disability and/or age; and (3) that she was not constructively discharged from her position.

**I.    Disability Discrimination**

The ADA is a federal civil rights statute enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). "In the employment context, the ADA prohibits a 'covered entity'...from 'discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 510 (1st Cir. 1996), *quoting* Katz v. City Metal Co., Inc., 87 F.3d 26, 30 (1st Cir. 1996). To establish a claim of disability discrimination under the ADA, a plaintiff must prove the following: "First, that he was disabled within the meaning

Case 3:06-cv-02163-JAG-BJM   Document 51   Filed 03/18/08   Page 8 of 20

**Carmen Navas v. MultiSystems Restaurants, Inc.**  Page 8
Civil No. 06-2163 (JAG/BJM)
Opinion and Order

of the Act. Second, that with or without reasonable accommodation he was able to perform the essential functions of his job. And third, that the employer discharged him," or otherwise discriminated against him in regards to compensation or other terms, conditions, and privileges of employment, "in whole or in part because of his disability." Katz, 87 F.3d at 30.

A plaintiff may indirectly prove his or her case "by using the prima facie case and burden shifting methods" that originated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Katz, 87 F.3d at 30 n.2 (citations omitted); see also Dichner v. Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998). This burden-shifting scheme applies in particular to claims of discriminatory discharge. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). Under this analysis, "a plaintiff must first prove by a preponderance of the evidence that he or she (i) has a disability within the meaning of the Act; (ii) is qualified to perform the essential functions of the job, with or without reasonable accommodations; (iii) was subject to an adverse employment action by a company subject to the Act; (iv) was replaced by a non-disabled person or was treated less favorably than non-disabled employees; and (v) suffered damages as a result." Jacques, 96 F.3d at 511.

Whether plaintiff wishes to pursue her claim directly or indirectly, she must prove by a preponderance of the evidence that she was disabled or regarded as disabled. Plaintiff avers that she was regarded as disabled under the ADA; she does not argue that she was actually disabled. (Docket No. 43, p. 1). Specifically, she argues that MultiSystems viewed her as someone with a mental disability that substantially interfered with her ability to work. MultiSystems argues that the factual record, read in the light most favorable to plaintiff, fails to support plaintiff's contention.

There are two ways an individual may be regarded as disabled under the statute: "(1) a

covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999). But a plaintiff claiming to be regarded as disabled "cannot merely show that his employer perceived him as somehow disabled; rather, he must prove that the employer regarded him as disabled within the meaning of the ADA." Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1169 (1st Cir. 2002). As such, in order for plaintiff to show that MultiSystems perceived her to be substantially limited in the major life activity of working, she "must show that [s]he was perceived as being unable to work in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities." Id. at 1169-70; see also Whitlock v. Mac-Gray, Inc., 345 F.3d 44, 46 (1st Cir. 2003) (to support a claim for being regarded as disabled, a plaintiff "must come forward with evidence that the employer perceived him as 'precluded from more than a particular job'"), *citing* Murphy v. UPS, 527 U.S. 516, 523-25 (1999); Sheehan v. City of Gloucester, 321 F.3d 21, 26 (1st Cir. 2003) ("In order for us to find [plaintiff] disabled under the 'regarded as' prong of the ADA, [plaintiff] would have to show that the City regarded his hypertension as rendering him unable to perform a broad range of jobs."), *citing* 29 C.F.R. § 1630.2(j)(3)(i).

In this case, Navas bases her contention that Reyes viewed her as mentally impaired because: 1) plaintiff requested permission on one occasion for permission to be absent from work in order to attend an appointment with a psychiatrist for her nerves; and 2) Reyes on one occasion said, "you're not well, take the little pill." Plaintiff's other supporting facts consist of general criticisms made by

**Carmen Navas v. MultiSystems Restaurants, Inc.**                                             Page 10
Civil No. 06-2163 (JAG/BJM)
**Opinion and Order**

Reyes of plaintiff's work, such as that plaintiff "could not be left without supervision," "talked with everyone passing by her work area and [got] distracted from her work," and "was constantly committing errors in labeling the records." (Docket No. 34, Exh. 6, p. 5-6). Although these comments demonstrate that Reyes was somewhat displeased with plaintiff's performance, they do not show that MultiSystems regarded plaintiff as disabled under the ADA. According to her comments, Reyes viewed plaintiff as overly talkative at work, easily distracted from the task at hand, and unskillful with regard to labeling records and punching in to and out of work. There is no indication from the record, however, that Reyes's opinion on these matters was due to any feeling that plaintiff was mentally impaired, and the single "little pill" comment is insufficient to make the connection between the alleged cause (perceived mental impairment) and effect (criticisms of job performance).

Navas also points to Bonilla's assertion hat Navas sprayed water into the offices and told people that "something bad will happen and that a bomb will go off. " However, Bonilla was not plaintiff's supervisor, but rather plaintiff's coworker (Docket No. 34, Exh. 8, ¶ 3), and there is no evidence in the record that Reyes or any other decision maker was aware of these events. Similarly, the fact that plaintiff on several occasions forgot to punch in to or out of work, or did so incorrectly (Docket No. 34, Exh. 1, p. 135-37), adds little weight to plaintiff's argument. There is no evidence that these mistakes contributed to any kind of view by plaintiff's supervisors that she was mentally disabled under the ADA.

Notwithstanding the above, Navas cites <u>Quiles-Quiles v. Henderson</u>, 439 F.3d 1 (1st Cir. 2006), to support her "regarded as" argument. In that case, the court held that the issue of whether

the plaintiff, a postal employee who suffered from severe depression, was regarded as disabled by his employer was a question for the jury. Id. at 5-6. To reach this conclusion, the court relied on the fact that three of the plaintiff's supervisors repeatedly made remarks to the effect that the plaintiff was mentally disabled and unfit for employment as a Post Office employee. One supervisor stated "on several occasions" that, because the plaintiff was under "psychiatric treatment," he was " a risk to the security ... of the Post Office." Id. at 6. A second supervisor stated "on several occasions" that the plaintiff was "a risk to the floor because [he] was under psychiatric treatment." Id. And finally, a third supervisor called the plaintiff "crazy" "five, six, seven times a day" and told him that he "should not be working" at the Post Office. Id. The court held that "[t]hese comments indicate that [the plaintiff's] supervisors perceived him to be potentially violent because of his mental impairment ... If [his] disability truly made him a safety risk to coworkers it would preclude him from holding most jobs in our economy." Id.

The facts in the present case fall far short of those found determinative in Quiles-Quiles. There, the evidence supported that the plaintiff's supervisors viewed him as "crazy" and so dangerous that he should not perform any job at the Post Office. Here, there is insufficient evidence for a reasonable jury to determine that plaintiff's superiors at MultiSystems viewed her or treated her as unqualified for her job or dangerous to her coworkers on account of her mental condition. Moreover, although the evidence suggests Reyes knew plaintiff had seen a psychiatrist for nerves, there is no evidence suggesting that Reyes believed this prevented plaintiff from performing a broad class of jobs in the office. In fact, Reyes knew about plaintiff's condition during her probation period and nevertheless kept plaintiff on when the probation period expired.

**Carmen Navas v. MultiSystems Restaurants, Inc.**  Page 12
Civil No. 06-2163 (JAG/BJM)
Opinion and Order

Navas also cites to 45 C.F.R. § 84.3(j)(2)(iv) – the regulation addressing the definition of "handicapped person" under the Rehabilitation Act – for the proposition that she qualifies as "regarded as" disabled because she "has a ... mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment."[1]  45 C.F.R. § 84.3(j)(2)(iv)(B).  But the record contains insufficient evidence upon which a jury could find that the attitudes of plaintiff's supervisors resulted in a mental impairment substantially limiting her ability to work.  The single instance where Reyes stated "you're not well, take the little pill" cannot form the basis for a verdict finding that the company's attitude rendered plaintiff disabled under the ADA.  Also relevant is the fact that Reyes knew about plaintiff's mental condition before the end of plaintiff's probationary period, yet plaintiff was nonetheless invited to stay on at MultiSystems after the end of the probationary period.  Accordingly, plaintiff has failed to demonstrate the existence of a genuine issue of fact as to whether she was regarded as disabled under the federal statute.

Navas's Puerto Rico law claim for disability discrimination fairs no better.  Law 44 bans discrimination against the disabled by any public or private institution that receives funds from the Commonwealth of Puerto Rico.  Specifically, Law 44 provides that such institutions may not take any action to "discriminate against persons with some type of physical or mental disability."  1 L.P.R.A. § 504.  In order to comport Law 44 to the ADA, the definition of "Person with a physical, mental or sensory disabilities" includes all persons that have a disability that substantially limits one

---

[1] The same standard has been adopted by the regulations governing the ADA.  "Under the ADA, a plaintiff is 'regarded as' disabled if he: ... (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment."  Arrieta-Colon v. Wal-Mart P.R., Inc., 434 F.3d 75, 88 (1st Cir. 2006), *quoting* 29 C.F.R. § 1630.2(l).

or more major life activities; that have a history of such a condition; or that are regarded as having such a disability. 1 L.P.R.A. § 501(d); see also Arce v. ARAMARK Corp., 239 F. Supp. 2d 153, 169 (D.P.R. 2003). In addition, the elements of proof for a claim under Law 44 are essentially the same as those for a claim under the ADA. Pérez Montero v. CPC Logistics, Inc., ___ F. Supp. 2d ___, 2008 WL 612341, at *9 (D.P.R. March 3, 2008); Torres-Alman v. Verizon Wireles P.R., Inc., 522 F. Supp. 2d 367, 401 (D.P.R. 2007); Zayas v. Commonwealth of Puerto Rico, 378 F. Supp. 2d 13, 23-24 (D.P.R. 2005). Moreover, "under Law 44, the plaintiff bears the initial burden of establishing each element of her claim for disability discrimination ...." Pérez Montero, ___ F. Supp. 2d ___, 2008 WL WL 612341, at *9. Accordingly, since plaintiff failed to demonstrate an issue of fact as to being regarded as disabled under the ADA, her Law 44 claim likewise fails. See Zayas v. Commonwealth of Puerto Rico, 378 F. Supp. 2d 13, 24 (D.P.R. 2005)

Even if Navas had marshaled sufficient evidence that she was regarded as disabled, the factual record does not adequately demonstrate that she was subjected to a hostile working environment. To succeed on a hostile work environment claim, a plaintiff must show that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Rios Jimenez v. Principi, __ F.3d __, 2008 WL 651630 at *8 (1st Cir. March 12, 2008). The "severe or pervasive" inquiry is highly fact-specific. See Marrero v. Goya of P.R., Inc., 304 F.3d 7, 19 (1st Cir. 2002); Figueroa Garcia v. Lilly del Caribe, Inc., 490 F.Supp.2d 193, 204 (D.P.R. 2007). The misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that

environment to be abusive. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). The court's examination of the evidence on this issue must take into account the totality of the circumstances; there is no mathematically precise test to determine whether a plaintiff has demonstrated sufficiently severe or pervasive harassment. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006). Factors the court should consider include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23; see also Johnson v. Spencer Press of Me., Inc., 364 F.3d 368, 377 (1st Cir. 2004). "'Subject to some policing at the outer bounds,' it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Marrero, 304 F.3d at 19, *quoting* Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 474 (1st Cir. 2002). Nevertheless, "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Ratón, 524 U.S. 775, 788 (1998) (internal citation omitted).

      In this case, there is insufficient evidence that plaintiff was subjected to a hostile work environment on the basis of a perceived mental disability. Reyes's single comment about the need "take the pill" cannot by itself support a finding of discriminatory animus based on perceived disability. By the same token, the taunts from co-workers that Navas was "the turnover lady" do not render the working environment permeated with insults and derogatory comments, and the occasional reprimands and contradictory instructions Navas received from Reyes, even when viewed

**Carmen Navas v. MultiSystems Restaurants, Inc.**  Page 15
Civil No. 06-2163 (JAG/BJM)
Opinion and Order

in the light most favorable to plaintiff, were not sufficiently severe and pervasive to alter the conditions of Navas's employment. Accordingly, I find that Navas has not put forward sufficient evidence of a hostile working environment.[2]

**II.   Age Discrimination**

The ADEA makes it illegal for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where an employee lacks direct evidence that the employer's actions were motivated by age animus, the burden-shifting framework from McDonnell Douglas, dictates the progression of proof. Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 (1st Cir. 2007); Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). Plaintiff does not argue that there is direct evidence that defendant's actions were motivated by discriminatory animus; thus, the McDonnell Douglass framework applies.

In this framework, the first step involves the employee's prima facie case. "To accomplish this modest task, the plaintiff must adduce evidence showing four facts: (i) that he is a member of the protected group; that is, that he was at least forty years of age when dismissed from his employment; (ii) that his job performance met or exceeded his employer's legitimate expectations; (iii) that his employer actually or constructively discharged him; and (iv) that his employer had a continuing need for the services that he had been rendering." Bennett, 507 F.3d at 30; see also Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Mesnick, 950 F.2d at 823. Defendant challenges plaintiff's ability to establish elements two and three.

---

[2] Plaintiff's claim of a hostile environment based on age fails for the same reasons.

**Carmen Navas v. MultiSystems Restaurants, Inc.**  Page 16
Civil No. 06-2163 (JAG/BJM)
**Opinion and Order**

Since Navas resigned from MultiSystems of her own accord, she must raise an issue of fact as to whether she was constructively discharged in order to make out her prima facie case. To establish constructive discharge, a plaintiff must show that the working conditions imposed by the employer became "so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Suárez, 229 F.3d at 54. "This standard cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held. The ultimate test is one of objective reasonableness." Id. (internal citation omitted); see also Serrano-Cruz v. DFI P.R., Inc., 109 F.3d 23, 26 (1st Cir.1997).

In Suárez, the court held that no reasonable trier of fact could find that an executive was constructively discharged under the ADEA when the company allegedly forced him to work overtime to complete a report, excluded him from meetings, relocated his staff, relegated him to developing clients for third parties rather than for firm's parent corporation, and made remarks arguably related to the plaintiff's age. Suárez, 229 F.3d at 54-56. In doing so, the court emphasized that "[t]he workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins – thick enough, at least, to survive the ordinary slings and arrows that workers routinely encounter in a hard, cold world. Thus, the constructive discharge standard, properly applied, does not guarantee a workplace free from the usual ebb and flow of power relations and inter-office politics." Id. at 54. Similarly, the First Circuit has emphasized that employees are not guaranteed a work environment free from stress. Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 561 (1st Cir. 1986).

In this case, the unpleasantries Navas was exposed to at work amount to "ordinary slings and

arrows that workers routinely encounter"; they cannot support a finding of constructive discharge. Plaintiff's coworkers' occasional use of nicknames for plaintiff do not suffice to make this showing. See Wargo v. Wal-Mart Stores, 2000 WL 1183093, at *1-*2, *4 n.1 (D.Me. 2000) (although the plaintiff, who was pregnant, was repeatedly called "hormones" by her male boss and "subjectively felt compelled to resign ..., the evidence in the summary judgment record would not allow a jury to find that a reasonable person in the plaintiff's position would have felt compelled to resign"). Reyes's statement about taking the little pill is insufficient as well. There is no evidence that plaintiff reacted negatively to the comment at the time it was made; in fact, according to Mr. Santo Domingo's testimony, plaintiff did not look nervous. (Docket No. 43, Exh. Q).

Navas's resignation after her run-in with Ms. Bonilla over whether or not she was allowed to make copies of applicants' materials – which upset plaintiff greatly in part because there had been other instances of inconsistent orders by Reyes – evinces plaintiff's subjective belief that she could no longer remain employed at MultiSystems. The task of this court, however, is to determine whether this belief by plaintiff was objectively reasonable. And, on balance, I find that it was not. The occasional name-calling, the "little pill" comment, and the contradictory instructions do not add up to a work environment "so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." Also relevant is the fact that plaintiff was hired by Ms. Reyes only seven months before she resigned. It does not seem likely that plaintiff would be forced out of her position on account of her age by the same person who hired her only a few months before. Under these facts, no reasonable jury could find that plaintiff was constructively discharged. Accordingly, I do not need to address defendant's remaining argument that Navas did

not meet the reasonable expectations of her employment.

Navas's Law 100 claim shares the same fate. Law 100 is Puerto Rico's anti-discrimination statute, and "differs from the ADEA only with respect to how the burden-shifting framework operates." Dávila v. Corporación de Puerto Rico para la Difusión Pública, 498 F.3d 9, 18 (1st Cir. 2007). Under Law 100, plaintiff has the initial burden to establish a prima facie case by "(1) demonstrating that she was actually or constructively discharged, and (2) alleging that the decision was discriminatory." Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007). There is no difference between the constructive discharge standard applied to Law 100 claims and the one applied to ADEA claims. See Velázquez-Fernández, 476 F.3d at 12 (applying the "so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign" standard to Law 100 claim). Accordingly, since the facts are insufficient to support a finding of constructive discharge under the ADEA, they are likewise inadequate under Law 100.

**III.   Unjust Dismissal**

Puerto Rico's Law 80 prohibits dismissal of employees without just cause. Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 28 (1st Cir. 1998). As with the causes of action discussed above, the threshold question under the Law 80 analysis is whether plaintiff can raise an issue of material fact as to whether she was constructively discharged from MultiSystems. Under Law 80, constructive discharge is defined as "the resignation of the employee caused by the actions of the employer directed to induce or compel him to resign, such as imposing or trying to impose on him more onerous working conditions, reducing his salary, lowering his category or submitting him

to derogatory criticisms or humiliations by deed or word." 29 L.P.R.A. § 185e. The basic elements of a constructive discharge claim under this law are: "(1) considerably serious actions by the employer that create an intimidating, hostile and offensive work environment; and (2) for the employee to have no other available alternative but to resign." Rivera v. DHL Global Forwarding, ___ F. Supp. 2d ___, 2008 WL 485116, at *6 (D.P.R. 2008), *citing* Sánchez Quiñonez v. Walgreens of P.R., 2005 WL 2516268, at *10 (TCA); Del Rosario v. Horwath, Vélez, Semprit & Co., 2003 WL 23314695, at *6 (TCA); see also Torres-Alman v. Verizon Wireless Puerto Rico, Inc., 522 F. Supp. 2d 367, 400 (D.P.R. 2007) ("in order for an employer's voluntary and unjustified acts to be deemed an implicit discharge under Act No. 80, the employee must prove that the only reasonable alternative he had left was to give up his job"). The plaintiff must clearly detail the acts that allegedly motivated her resignation and demonstrate the magnitude of the onerous working conditions; a mere annoyance or disagreement with the employer's measures is insufficient to sustain a constructive discharge claim. Rivera, 2008 WL 485116, at *6; Rivera Figueroa v. The Fuller Brush Co. of P.R., Inc., 2006 WL 3469301, at *3, *5 (TCA); see also Sociedad Legal de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178, 207 (1998).

Navas has not put forward sufficient facts to create a genuine issue that she was left no reasonable alternative but to resign. In fact, Ms. López suggested a reasonable alternative the day plaintiff quit: to talk with Reyes about her feelings. Instead, plaintiff submitted her resignation to Reyes, and refused at the time to give any reasons for leaving. Under these facts, there is no issue of material fact as to whether plaintiff was constructively discharged under Law 80. Therefore, defendant's motion for summary judgment on the Law 80 claim is **granted**.

**Carmen Navas v. MultiSystems Restaurants, Inc.** Page 20
**Civil No. 06-2163 (JAG/BJM)**
**Opinion and Order**

## CONCLUSION

In view of the foregoing, defendant's motion for summary judgment is **GRANTED**, and the complaint is **DISMISSED** with prejudice. Judgement shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of March, 2008.

        **S/Bruce J. McGiverin**
        BRUCE J. McGIVERIN
        United States Magistrate Judge